RECEIVED
IN ALEXANDRIA, LA
JUN 17 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SAMUEL SNYDER | DOCKET NO. 04-CV-1068 |
| VERSUS | JUDGE DRELL |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This case comes before the Court for a review of the final decision of the Commissioner of Social Security ("Commissioner"), denying Samuel Snyder Supplemental Security Income Benefits ("SSI") under the Social Security Act ("SSA"). 42 U.S.C. § 1381(a). The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that Snyder is not disabled and thus not entitled to SSI benefits.

Snyder, who was born in 1956, has a tenth grade education, and has no relevant past relevant work experience, filed an application for SSI on January 15, 2002. Snyder alleged a disability onset date of December 12, 2000 (Tr. 75), due to surgical loss of the left eye and glaucoma (Tr. 83). Disability Determination Services (DDS) requested a consultation by Dr. Robert Po and denied Snyder's claim. A request for hearing was timely made, and a hearing was conducted on April 22, 2003. Snyder, unrepresented by counsel, appeared and testified at the hearing, as did Susan Douglas, a Vocation Expert. (Tr. 21-50.) The ALJ issued a decision unfavorable to the claimant on December 18, 2003, and Snyder filed

the instant lawsuit on May 17, 2004.

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th C. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial

2

evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Issues

Snyder raises the following issues for review:

(1) Whether the ALJ's finding that Snyder had the residual functional capacity to perform light work is supported by substantial evidence;

(2) Whether the ALJ failed to evaluate Snyder's uncontroverted impairment of exogenous obesity under the non-severity legal standard at Step 2 of the sequential evaluation process; and

(3) Whether the ALJ posited a defective hypothetical question to the vocational expert at Step 5 of the sequential evaluation process.

Factual Background

Snyder is forty-nine years old and has a tenth grade education. He filed for SSI on January 15, 2002, claiming that he was unable to work due to glaucoma in the right eye and the surgical removal of his left eye. (Tr. 83.) On December 12, 2000, Snyder reported to the emergency room after suffering an eye injury. Snyder reported to the medical staff that, while at work and burning leaves at a client's house, something in the fire exploded, broke his glasses, and knocked him down. (Tr. 107.) Upon physical examination, it was found that Snyder's left eye globe was disrupted. (Tr. 107.) An operation was performed to repair an eyelid laceration and to remove Snyder's left eye. (Tr. 107.) Snyder's hospital records reflect that he suffered a projectile injury to his left eye from a bullet, with foreign body debris in his brain. (Tr. 111, 113.)

Snyder reported to Lions Eye Center on May 8, 2001, expressing

4

an interest in a prosthesis. (Tr. 120.) Snyder informed the eye clinic that he suffered from glaucoma. He returned to Lions Eye Clinic on October 10, 2001, with complaints about his vision. He reported that he wore glasses, but could read better without them. He was not interested in receiving bifocals. (Tr. 118.)

At the request of DDS, Snyder was evaluated by Dr. Robert Po, M.D., of the Orthopaedic Clinic of Avoyelles, Inc. (Tr. 122.) X-ray of the cervical spine revealed no fracture or dislocation, some arthritis, and some posterior and anterior osteophyte formation of C5-6. (Tr. 125.) X-ray of the lumbosacral spine showed no evidence of fracture, dislocation, or scoliosis. An asymmetrical facet was noted on the left side of L5. The sacroiliac joints were normal. There was extensive anterior osteophyte formation of several lumbar and throacic bodies. Disc space was narrow at L5-S1. Dr. Po diagnosed cervical disc disease at C5-6 and C6-7, degenerative disc disease at L5-S1, surgical loss of the left eye secondary to gunshot wound, history of glaucoma of the right eye, nicotine addiction, exogenous obesity[1], and left shoulder joint arthritis. (R. 125.)

Dr. Po opined that Snyder could occasionally lift 25 pounds and frequently lift 10 pounds. (Tr. 125.) In an eight hour period, he can sit a total of 6 hours, but only 1 hour

---

[1] Snyder was 6'1" tall, and weighed 208 lbs upon evaluation by Dr. Po. (Tr. 123.) However, at the hearing, he testified that he had lost about 20-25 pounds and weighed 185 lbs.

5

continuously, and can stand/walk a total of 4 hours, but only 15 minutes continuously. (Tr. 125.) He found no hearing, speaking or mental problems.

DDS requested an eye examination by Dr. M. T. Wheat, M.D. Dr. Wheat found that Snyder could read fine and large print and could handle and work with large objects. (Tr. 138.) The doctor noted that Snyder could not drive an automobile due to constricted visual field resulting from glaucoma, and could not operate machinery and should avoid objects in workplace pathways. (Tr. 138.) Dr. Wheat's report reflects that Snyder's corrected vision, with glasses, was 20/20. (Tr. 138.) However, Dr. Wheat noted that the Visual Field test was "unreliable but shows a constricted visual field due to glaucoma." (Tr. 138.)

According to Snyder, he is able to walk "as far as I want" before having to stop and rest. (Tr. 98.) He rides a bicycle, and testified that he is physically able to do so on a daily basis. (Tr. 95, 28.) Snyder testified that on a good day, when his eye was not bothering him, he could do "basically about anything," but that his eye bothers him most of the time. Snyder testified that about once a week, he has problems with his vision, sees spots, and experiences dizziness. (Tr. 33.) Snyder testified that his physical health was generally good, and that he perceived no limits on his ability to lift objects. However, he would have a problem lifting if he had to bend over to pick the item up, because bending

causes pressure to build up in his eye. (Tr. 34.) Snyder testified that he does not clean much around the house, as he has no electricity, water, or gas. (Tr. 35.)

At the hearing, Snyder stated that he was not seeing any doctors for his medical problems, was not taking any medications, and had not recently been hospitalized. (Tr. 36.) Snyder stated that he was in good physical health, other than his eye/vision problems.

At Step 3 of the Five Step Sequential Evaluation Process, 20 C.F.R. 404.1520, the ALJ found that Snyder's impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 12.) However, I find that there is insufficient evidence in the record to support such a determination. As the ALJ noted, Section 2.03 provides that an impairment of disability of contraction of peripheral visual fields exists when there is evidence of contraction of peripheral visual fields in the better eye to 10 degrees or less from the point of fixation; or so the widest diameter subtends an angle no greater than 20 degrees; or to twenty percent or less visual field efficiency. While the Lions Eye Center does not note a loss of visual field in the right eye (Tr. 118-121), Dr. Wheat found that the visual field testing he performed was not reliable (Tr. 138). However, the test was telling enough such that Dr. Wheat concluded that Snyder had **a constricted visual field** due to glaucoma.

7

Without definitive and reliable visual field test results, the Commissioner cannot properly determine whether Snyder's impairment does or does not meet or medically equal Listing 2.03. If Snyder meets Listing 2.03, then he would be disabled, and entitled to benefits. In the event that Snyder does not meet or medically equal Listing 2.03, the Court offers the following analysis of Snyder's claims.

Issue No. 1: **Whether the ALJ's finding that Snyder had the residual functional capacity to perform light work is supported by substantial evidence**

Snyder argues that the ALJ's residual functional capacity ("RFC") determination that Snyder could perform light work is not supported by substantial evidence. Specifically, Snyder argues that the ALJ erred in rejecting Dr. Po's opinion regarding Snyder's ability to stand/walk. Dr. Po opined that Snyder could walk no more than four hours in an eight hour day. (Tr. 125.) Still, the ALJ concluded that Snyder could perform a limited range of light work, which does not require binocular vision, peripheral vision, working at heights, or operating automobiles or machinery. (Tr. 17.)

"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967. Even though the weight lifted may be very little, a job is in this category when it requires a good deal

8

of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a **full or wide range** of light work, a claimant must have the ability to do *substantially all* of these activities. 20 C.F.R. § 416.967. In this case the ALJ did not conclude that Snyder could perform a full or wide range of light work. Rather, the ALJ found that Snyder could perform a limited range of light work. Nonetheless, it is clear from the record that Snyder could perform "substantially all" of the activities described for light work.

20 C.F.R. § 404.1527 provides that, if any of the evidence in the case record, including any medical opinion, is inconsistent with other evidence or is internally inconsistent, the ALJ will weigh all of the evidence and see whether he can decide if the claimant is disabled based on the evidence. In the instant case, Dr. Po's opinion is inconsistent with Snyder's own testimony. While Dr. Po opined that Snyder could only sit/stand for four hours in a work day, and only at fifteen minute intervals, Snyder testified that he was in good health physically. (Tr. 36.) Snyder noted that he could walk "as far as I want" before he would have to stop and rest, and he testified that he could walk or ride his bike a "great deal" if not in direct sunlight. (Tr. 98.) He stated that he does not drive; rather, he rides a bicycle as his means of transportation. He stated that the only illnesses, injuries, or

conditions that limited his ability to work were glaucoma and vision loss. (Tr. 83.)

Additionally, Dr. Po opined that Snyder could occasionally lift 25 pounds and frequently lift 10 pounds. (Tr. 125.) Snyder testified that there was no limit on what he could lift, as long as it did not involve bending. The bending limitation was not based on back pain; it was based on Snyder's eye problems. Snyder denied having problems walking. Based on Snyder's testimony, his physical limitations are due to loss of vision and eye pain caused by glaucoma.

An ALJ should not reject a medical opinion without explanation and must show good cause for doing so. See Loza v. Apfel, 219 F.3d 378, 395 (5th Cir. 2000). Here, the ALJ specifically noted that, in addition to Snyder's own testimony regarding his physical abilities, Snyder was not being treated by a physician for neck or back pain, and had never sought such treatment in the past. (Tr. 15.) The ALJ noted that, even if Snyder could not afford such treatment, it is available through the charity hospital system in Louisiana.[2]

The ALJ has discretion to determine whether to credit the testimony of a medical expert. See, e.g., Greenspan v. Shalala, 38 F.3d at 237 ("In sum, the ALJ 'is entitled to determine the

---

[2] Snyder has never testified or even implied that he failed to seek treatment for back pain due to financial inability.

credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.") (citation omitted). This Court's task in reviewing the decision is to determine only whether the Social Security Commissioner's decision was supported by substantial evidence in the record, not to reweigh the evidence or try the issues de novo. Greenspan, 232 at 236; 42 U.S.C. § 405(g).

I find that there is substantial evidence in the record to support the Commissioner's determination that Snyder's alleged back problem did not prevent him from performing light work.

Issue No. 2: Whether the ALJ failed to evaluate Snyder's uncontroverted impairment of exogenous obesity under the non-severity legal standard at Step 2 of the sequential evaluation process

Snyder argues that the ALJ failed to evaluate his "uncontroverted impairment of exogenous obesity" under the non-severity legal standard at Step 2 of the sequential evaluation process. After his consultative examination of Snyder, Dr. Po issued a diagnosis of "exogenous obesity." As noted by Snyder in his brief, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. (Doc. #13, p.8); 20 C.F.R. § 416.927. Here, despite Dr. Po's diagnosis, there are no signs, symptoms, or laboratory findings indicating that Snyder suffers from obesity.

Snyder claims that a discussion of this alleged impairment is "spectacularly absent" from the ALJ's decision. As Snyder pointed

11

out, an ALJ must apply the standard for identifying a non-severe impairment **unless the record supports a finding that the claimant had no impairment at all.** See Domingue v. Barnhart, 388 F.3d 462 (5th Cir. 2004) (finding that "[t]he ALJ did not misapply the standard for identifying a nonsevere impairment because the ALJ concluded that the alleged depression was no impairment at all.")[3]. Here, as in Domingue, the ALJ did not misapply the standard for identifying a nonsevere impairment because the record is clear that Snyder does not suffer from an impairment of exogenous obesity.

At the time of Dr. Po's evaluation, Snyder was 6'1" tall and weighed 208 pounds. Such a height/weight combination is considered "overweight," but not "obese," according to the Center for Disease Control and Prevention as well as the American College of Physicians.[4] Additionally, at the time of the administrative

---

[3]Snyder cited, and the Court references Domingue v. Barnhart, 388 F.3d 462 (5th Cir. 2004), which is an unpublished opinion . Under Fifth Circuit Court of Appeal Local Rule 47.5.4, unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, abuse of the writ, notice, sanctionable conduct, entitlement to attorney's fees, or the like). An unpublished opinion may, however, be persuasive. An unpublished opinion may be cited, but if cited in any document being submitted to the court, a copy of the unpublished opinion must be attached to each document.

[4]www.medlineplus.gov, www.cdc.gov/nccdphp/dnpa/bmi/index.htm (CENTER FOR DISEASE CONTROL AND PREVENTION); www.doctorsforadults.com/topics/dfa_obes.htm (AMERICAN COLLEGE OF PHYSICIANS

hearing, Snyder testified that he had lost about 20 to 25 pounds and weighed 185 lbs. A height of 6'1" and weight of 185 lbs. is considered "normal."[5]

Furthermore, at the administrative level, Snyder never contended that obesity was an impairment, and pointed to no evidence indicating that his ability to work was affected by his weight. See Domingue 388 F.3d at 463 ("At the administrative level Domingue did not contend that depression was an impairment, and, in the courts, she pointed to no evidence indicating that her alleged depression affected her ability to work."); Shave v. Apfel, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment). It is clear from this record that Snyder does not suffer from exogenous obesity. Further, Snyder has not shown how this alleged impairment limits his ability to work in any way. The ALJ's conclusion that exogenous obesity is not an impairment is fully supported by substantial evidence in the record.

Issue No. 3:   Whether the ALJ posited a defective hypothetical question to the vocational expert at Step 5 of the sequential evaluation process.

Snyder argues that the hypothetical posed to the ALJ was defective because it did not include "exogenous obesity." As

---

[5] www.medlineplus.gov, www.cdc.gov/nccdphp/dnpa/bmi/index.htm (CENTER FOR DISEASE CONTROL AND PREVENTION); www.doctorsforadults.com/topics/dfa_obes.htm (AMERICAN COLLEGE OF PHYSICIANS

discussed above, Snyder does not suffer from an impairment of exogenous obesity. Therefore, the ALJ did not err by not including obesity in the hypothetical to the VE.

Additionally, Snyder argues that the ALJ's hypothetical to the VE was defective in that it did not include Dr. Po's limitation that Snyder could walk/stand for only 4 hours in an eight hour day. The ALJ asked the VE to assume a hypothetical claimant who can walk or stand six hours in an eight-hour day. (Tr. 45.)

The Fifth Circuit has stated that, "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate *reasonably all of the disabilities of the claimant recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question... a determination of non-disability based on such a defective question cannot stand." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). Here, the hypothetical incorporated reasonably all of the disabilities recognized by the ALJ; it included only those impairments that the ALJ found to be credible. The ALJ found that, based on the record and Snyder's testimony, Snyder could stand/walk for six hours in an eight hour day.

Snyder was afforded an opportunity to correct any perceived deficiencies, to ask any questions, or provide any additional information. (Tr. 48.) While Snyder was unrepresented by counsel, he waived the right. No claim has been made, and the record does

14

not indicate, that Snyder's waiver of right to counsel was invalid or improper.

Despite the foregoing discussion of Snyder's claims, the record lacks sufficient evidence to conclude whether Snyder does or does not meet or medically equal Listing 2.03. Therefore, after a review of the entire administrative record and the briefs and exhibits filed by both parties, and pursuant to 42 U.S.C. §405(g), I find that there is not substantial evidence in the record as a whole to support the Commissioner's decision of nondisability at this time.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the case be REMANDED to the Commissioner so that a valid medical evaluation can be conducted in order to provide necessary evidence for a proper determination of whether Snyder meets or medically equals Listing 2.03.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or

request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this day of June, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE